UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RYAN DEERING

                  *Plaintiff*,                      **CASE NO.**

    -against-                             **COMPLAINT**

                                          **JURY TRIAL DEMAND**

THE CITY OF NEW YORK,
NEW YORK CITY POLICE DEPARTMENT
("NYPD") LIEUTENANT RICHARD ASSING,
NYPD SERGEANT PETER BORISENKO, NYPD
LIEUTENANT MAGGIE CLAMP, RETIRED
NYPD DEPUTY CHIEF KRISTEL JOHNSON,
NYPD CAPTAIN TANYA KINSELLA, NYPD
SERGEANT HERMAN LAI, NYPD CAPTAIN
KRYSTIN SUAREZ, and NYPD CAPTAIN
 BESEMAH ROGERS,

                      *Defendants*.
------------------------------------------------------------X

        Plaintiff, Ryan Deering ("Plaintiff" or "Deering"), by and through his attorneys, Ballon Stoll P.C., complaining of Defendants, the City of New York, New York City Police Department ("NYPD") Lieutenant Richard Assing ("Lt. Assing"), NYPD Sergeant Peter Borisenko ("Sgt. Borisenko"), NYPD Lieutenant Maggie Clamp ("Lt. Clamp"), Retired NYPD Deputy Chief Kristel Johnson ("Dpt. Chief Johnson"), NYPD Captain Tanya Kinsella ("Capt. Kinsella"), NYPD Sergeant Herman Lai ("Sgt. Lai"), NYPD Captain Krystin Suarez ("Capt. Suarez"), and NYPD Captain Besemah Rogers ("Capt. Rogers"), alleges with personal knowledge, unless where upon information and belief is stated, the following:

## INTRODUCTION

    1.    This action seeks to remedy Defendants' intentional and unlawful discrimination based on Plaintiff's disability, in violation of in violation of the Americans with Disabilities Act

of 1990 ("ADA"), 42 U.S.C. § 12122 *et seq.*; and based on race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, the Executive Law of the State of New York, the New York State Human Rights Law ("Executive Law"), § 296, *et seq.*, and the Administrative Code of the City of New York, New York City Human Rights Law ("Administrative Code"), § 8-101, *et seq.*

## JURISDICTION AND VENUE

2.      This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 2000-e5(f)(1), -e5(f)(3).

3.      This Court has supplemental jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a). The New York State and New York City discrimination claims are inexorably related to, arise out of the same operative facts and circumstances as, and are necessary, integral parts of the federal law claims, such that the federal claims and New York State and New York City law claims form part of the same case or controversy.

4.      As the Eastern District of New York is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2).

5.      Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") against Defendants, in which he alleged, *inter alia*, that Defendants discriminated against plaintiff on the basis of his sex, race, and disability, as alleged in this complaint.

     a.  The instant action is timely because it is initiated within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

     b.  Plaintiff has exhausted his federal administrative remedies as concern the allegations in this Complaint.

6.    The EEOC, issued a Notice of Right to Sue, dated March 26, 2021 (**Exhibit A**), under Title VII of the Civil Rights Act of 1964 and the Americans with Disability Act.

## PARTIES

*Plaintiff*

7.    Plaintiff, Ryan Deering, resides in Oceanside, Nassau County, State of New York.

8.    Plaintiff is a Latino male.

9.    Plaintiff is an "employee" within the meaning of Executive Law § 292 (6), and a "person" within the meaning of 42 U.S.C. § 1211(7); Executive Law § 292(1); and the Administrative Code § 8-102(1).

10.    Plaintiff is an individual with a disability within the meaning of 42 U.S.C. § 12117. Mr. Deering suffers from a torn shoulder and a torn hip, which have been seriously limiting his life activities since October 2020.

11.    Plaintiff is an "individual" within the meaning of 42 U.S.C. § 2000e-2(a)(1).

*Defendants*

12.    Defendant the City of New York (the "City") is a municipal corporation existing by virtue of the laws of the State of New York.  The City, through the New York City Police Department ("NYPD"), is liable for the discrimination and retaliation Plaintiff suffered.

13.     Defendant City is an "employer" within the meaning of Executive Law § 292(5), the New York City Administrative Code § 8-107(5), and 42 U.S.C. § 2000e(b). Upon information and belief, the NYPD employees approximately 40,000 police officers throughout the City.

14.     At all relevant times herein, Plaintiff was employed by the City at its NYPD.

15.     Upon information and belief, Lt. Assing is employed by the City's NYPD as a Lieutenant and has and/or had supervisory authority over Plaintiff.

16.     Upon information and belief, Sgt. Borisenko is a Caucasian male and is employed by the City's NYPD as a Sergeant and has and/or had supervisory authority over Plaintiff.

17.     Upon information and belief, Lt. Clamp is a Caucasian female and is employed by the City's NYPD as a Lieutenant and has and/or had supervisory authority over Plaintiff.

18.     Upon information and belief, Dpt. Chief Johnson is a Black female and was employed by the City's NYPD as a Deputy Chief but is now retired and previously had supervisory authority over Plaintiff.

19.     Upon information and belief, Capt. Kinsella is a Black female and is employed by the City's NYPD as a Captain and has and/or had supervisory authority over Plaintiff.

20.     Upon information and belief, Sgt. Lai is an Asian male and is employed by the City's NYPD as a Captain and has and/or had supervisory authority over Plaintiff.

21.     Upon information and belief, Capt. Suarez is a Latina female and is employed by the City's NYPD as a Captain and has and/or had supervisory authority over Plaintiff.

22.     Upon information and belief, Capt. Rogers is a Black female and is employed by the City's NYPD as a Captain and has and/or had supervisory authority over Plaintiff.

## **JURY DEMAND**

23.     Plaintiff hereby demands a trial by jury in this action.

## FACTS

24.     Plaintiff became an NYPD Police Officer in 2012.

25.     During his time at the NYPD, Plaintiff has consistently received favorable evaluations.

26.     During his time at the NYPD, Plaintiff has been subjected to a hostile work environment and severe discrimination on the basis of his sex and race, as well as retaliation, at the hands of Defendants.

27.     Defendants have made numerous comments indicating animus towards men, especially men, including Plaintiff, who display attributes and participate in activities that are stereotypically associated with masculinity.

28.     Plaintiff is tall (6'1") and frequently works out to maintain a muscular physique, an appearance that is stereotypically associated with masculinity.

29.     In or about January, 2018, Plaintiff's ex-girlfriend made allegations of domestic violence against him.  There was no truth to these allegations, and, in or about January, 2018, Plaintiff's ex-girlfriend recanted her allegations of domestic violence against Plaintiff and all charges against him were dropped.

30.     From in or about January 2018, NYPD investigated the allegations of domestic violence.

31.     In or about May or June 2019, the investigation was completed and the case closed.

32.     Upon information and belief, Defendants hold animus against Plaintiff because of these recanted allegations specifically because Plaintiff is a male who had such allegations raised against him.

33.     Upon information and belief, Defendants did not subject a female officer facing domestic violence charges to such negative and hostile treatment.

34.     Prior to joining the NYPD, Plaintiff lawfully maintained a successful business breeding pit bulls, several of which he still owns.

35.     Upon information and belief, Defendants hold animus against Plaintiff because of his former business and his current ownership of pit bulls, dogs that are stereotypically associated with masculinity.

36.     Capt. Suarez, Capt. Rogers, Capt. Kinsella, Lt. Clamp, Lt. Assing, Sgt. Lai, and Sgt. Borisenko, and others frequently make disparaging comments about Plaintiff and unfairly reprimand Plaintiff in front of other supervisors and officers.

37.     In or about late 2013, Capt. Valdez referred to Plaintiff as the "new 'stud' of PSA1" in front of other supervisors, which embarrassed Plaintiff and made him uncomfortable.  Upon information and belief, named Defendants, including but not limited to Capt. Suarez, heard about this incident.

38.     In or about 2014, Dpt. Chief Johnson was brought into Plaintiff's unit as the new commanding officer.

39.     Plaintiff had been transferred to Red Hook prior to going to Dpt. Chief Johnson's arrival.

40.     In Red Hook, Capt. Suarez—at the time an NYPD sergeant—frequently assigned Plaintiff to undesirable posts (called "punishment posts") when he had done nothing wrong.  Capt. Suarez would frequently assign Plaintiff to these undesirable posts without a partner, which is considered especially punishing, as well as unsafe.  Assigning officers to work fixed posts without partners is against NYPD policy.

41.     Upon information and belief, Capt. Suarez did not assign female officers to such undesirable and unsafe posts when they had done nothing wrong.

42.     Upon information and belief, Capt. Suarez assigned Plaintiff to punishment posts based on discriminatory animus held towards Plaintiff because of his sex.

43.     Capt. Suarez frequently said negative things about Plaintiff to other officers and supervisors, including supervisors she knew in other precincts, which caused them to dislike Plaintiff.   Upon information and belief, Capt. Suarez made these statements in order create a hostile work environment in which Plaintiff experienced harassment because of his sex.

44.     In or about late 2014, Plaintiff suffered a torn shoulder while on duty—considered a line of duty ("LOD") injury—but Capt. Suarez forced Plaintiff to remain on duty for an additional six hours, despite Plaintiff experiencing significant pain.

45.     In or about late 2014, Plaintiff had surgery on his shoulder.

46.     In or about late 2014, after Plaintiff's surgery, Plaintiff was assigned to the NYPD's Video Interaction Patrol Enhancement Response ("VIPER") unit.

47.     While in VIPER, Plaintiff was continually harassed by the NYPD regarding submitting medical forms, including forms containing confidential HIPAA information, from his surgery, which he had already done, and had to repeatedly fill out the same forms.   In or about early 2015, the NYPD even threatened to suspend Plaintiff if he did not submit his medical records.

48.     Upon information and belief, similarly situated NYPD employees who were female, not Latino, and not suffering from a medical disability, were not harassed in such a manner by the NYPD.

49.     In or about the summer of 2015, a female VIPER sergeant ordered Plaintiff install a window air conditioning unit, despite Plaintiff's injury, stating: "You're a man, you do it." There were many female officers present, but Plaintiff was only one of two male officers present.

50.     While installing the unit, Plaintiff threw out his back—considered an LOD injury— and had to go on medical leave again.

51.     As a result of Plaintiff's mistreatment while at VIPER, Plaintiff experienced constant stress and anxiety and contacted the NYPD's psychological unit for help.

52.     In or about early 2016, Plaintiff was transferred back into PSA1, where he was immediately passed around from supervisor to supervisor because he was considered "a problem."

53.     In or about early 2016, very soon after returning from VIPER, Plaintiff was placed on the midnight tour, considered an undesirable tour, even though Plaintiff was more senior than many officers placed on the day tours. Upon information and belief, this is against NYPD policy.

54.     In or about late 2016, Plaintiff requested to be placed in the Neighborhood Coordination Officer ("NCO") program, but his request was denied, and the opportunity was given to a more junior, non-Latino male officer. Upon information and belief, the NYPD denied Plaintiff this opportunity because of his race.

55.     In or about late 2016, Plaintiff was switched back into the day tour and was immediately given numerous command disciplines for minor infractions, which is not standard NYPD practice.

56.     In or about ate 2016, Plaintiff received a command discipline when his partner, not Plaintiff, went to the restroom while on duty.

57.     Upon information and belief, Plaintiff received these command disciplines because of his sex and race, and because of his medical disability.

58.     In or about April 2018, Plaintiff tore his knee playing in NYPD football practice. As a result, in or about October or November 2018, Plaintiff was transferred to VIPER.

59.     Plaintiff remained at VIPER until June 2020 and was therefore stationed there for approximately eighteen (18) months, far longer than is typical.

60.     In or about July 2020, Plaintiff returned to active duty at Red Hook.

61.     Beginning in or about late 2020, Plaintiff and his fellow officers discussed Defendants' actions towards Plaintiff, and Plaintiff expressed that he believed he was being mistreated because of his race and sex.

62.     In or about late 2020, upon information and belief, Defendants learned that Plaintiff was discussing their mistreatment of him and continued to take adverse action against Plaintiff in retaliation against this protected opposition.

63.     In or about late 2020, Plaintiff filed a charge against the NYPD with the EEOC.

64.     In or about late 2020, upon information and belief, Defendants learned that Plaintiff had filed a charge with the EEOC and continued to take adverse action against Plaintiff in retaliation against this protected participation in EEOC proceedings.

65.     Upon information and belief, Dpt. Chief Johnson, Capt. Suarez, Capt. Rogers, Capt. Kinsella, Lt. Clamp, Lt. Assing, Sgt. Lai, and Sgt. Borisenko pressured other NYPD supervisors and officers to treat Plaintiff poorly.

66.     For example, Plaintiff is regularly disciplined for arriving to work late, whereas other police officers, who are not Latino and/or are female, are not similarly disciplined for their lateness.

67.     In Plaintiff's experience, it is common knowledge in that many officers are frequently late, and it is standard practice for officers who are not severely late to not be punished.

68.     Upon information and belief, Defendants enforced rules regarding lateness irregularly and specifically used those rules to target and disparage Plaintiff because of his sex and race.  Defendants enforced these rules against Plaintiff even though roll call usually begins up to twenty minutes after shift starts.

69.     Since Plaintiff left VIPER in or about mid-2020, Defendants have repeatedly transferred Plaintiff back and forth between Red Hook, Coney Island, and Breukelen without explanation, causing Plaintiff great inconvenience and making it more difficult for Plaintiff to arrive to work on time.  Upon information and belief, other non-Latino and/or female employees have not been repeatedly transferred back and forth in the same way.

70.     Since Plaintiff returned from VIPER in or about mid-2020, Defendants have repeatedly changed Plaintiff's hours, causing Plaintiff great inconvenience and making it very difficult for him to adjust to any particular work schedule.

71.     Defendants closely monitor Plaintiff's time, movements, and location in ways that other, non-Latino and/or female employees are not monitored.

72.     Defendants, including but not limited to Sgt. Borisenko and Sgt. Lai, frequently tell Plaintiff that they are "watching him." Upon information and belief, Defendants do not say this to female and/or non-Latino officers.

73.     Defendants repeatedly call and text Plaintiff on his days off. Other non-Latino and/or female officers are not similarly contacted on their days off.

74.     Plaintiff is frequently given fixed post assignments, considered to be a punishment within the NYPD, while female and non-Latino officers, with much less experience than Plaintiff, are given patrol cars and desk duty, which are considered superior assignments.

75.     On or about August 28, 2020, Plaintiff arrived fifteen (15) minutes late and was inappropriately berated by Sgt. Borisenko and Sgt. Lai in front of numerous other officers, and Sgt. Lai wrote Plaintiff a command discipline.   Capt. Kinsella further shouted at Plaintiff in her office.

76.     On or about August 29, 2020, Plaintiff arrived two (2) minutes late and was forced to forfeit paid time.   Plaintiff was frequently forced to forfeit paid time in circumstances in which other non-Latino and/or female officers were not.

77.     In or about August 2020, Capt. Kinsella specifically told Plaintiff that a woman would be able to do Plaintiff's job better than he could.

78.     On September 5, 2020, Capt. Kinsella asked if Plaintiff was on time and disparagingly referred to him as a "typical man."

79.     On September 10, 2020, Sgt. Anthony Catania assigned Plaintiff a fixed post even when extra cars were available at base. Plaintiff was by far the most senior officer on duty that day, but all patrol cars were given to rookie officers. Defendants have assigned Plaintiff fixed posts under similar circumstances on numerous occasions.   Upon information and belief, Defendants pressured Sgt. Catania into giving Plaintiff undesirable assignments.

80.     On September 12, 2020, Sgt. Catania assigned Plaintiff a fixed post while providing cars to officers on posts doing overtime.   Upon information and belief, giving cars to officers on posts doing overtime was against standard NYPD practice.

81.     On September 17, 2020, Lt. Clamp inappropriately sent multiple female officers into the men's locker room to look for Plaintiff when he was changing, even though there were male officers available who she could have sent, causing Plaintiff to feel embarrassment and anxiety.

82.     On September 17, 2020, while Plaintiff was on a fixed post, Lt. Clamp repeatedly circled Plaintiff's post in an unmarked car.  Upon information and belief, Lt. Clamp has not directed such behavior towards similarly situated female and/or non-Latino officers.

83.     On or about September 22, 2020, Plaintiff arrived 25 minutes late and was threatened with a command discipline by Lt. Assing, who berated Plaintiff and told him "this job is not for you" in front of other officers.  Plaintiff had called the desk ahead to let them know that he was going to be late, which is a standard procedure that other officers typically do not follow, but which they are not held accountable for.

84.     On days that Plaintiff is late, Plaintiff follows procedure and puts in for lost time. When officers put in for lost time, NYPD standard procedure is that supervisors do not issue command disciplines.  Despite the standard procedure, Defendants threaten to give or actually give Plaintiff command disciplines when he has put in for lost time.

85.     Capt. Rogers and Lt. Clamp frequently pressure supervisors to write Plaintiff command disciplines where they are unwarranted.

86.     On September 27, 2020, Defendants stationed Plaintiff at Brooklyn Central Booking, considered an undesirable posting.  Officers with significantly less experience and who were non-Latino and/or were female were given patrol duties.  Upon information and belief, this was against standard NYPD practice.

87.     In or about September 2020, Capt. Rogers told Plaintiff's union delegate, Officer Belen, that she "takes it as a big 'fuck you'" when Plaintiff is late.  Upon information and belief, Capt. Rogers does not take such a person interest in the lateness of other officers, including officers who are women and/or not Latino.

88.     On that same occasion, also to Officer Belen, Capt. Rogers threatened to "psych" Plaintiff off the job, meaning that she would try to have Plaintiff fired for (nonexistent) psychological problems.  This statement was inappropriate and her suggestion was completely against NYPD policy.  Upon information and belief, she did not make such statements about any non-Latino and/or female officers.

89.     In or about September 2020, Lt. Clamp attempted, but failed, to have Plaintiff transferred to the Bronx, which would have significantly inconvenienced Plaintiff by making it extremely difficult for Plaintiff to get to work on time, given that Plaintiff resides on the south shore of Long Island.

90.     In or about October 2020, Plaintiff was transferred to Coney Island for several days without explanation.

91.     On or about October 4, 2020, Officer Morgan, a Black male, arrived twenty-six (26) minutes late and received no discipline.

92.     On October 5, 2020, Defendants stationed Plaintiff at Brooklyn Central Booking, considered an undesirable posting. Officers with significantly less experience and who were non-Latino and/or were female were given patrol duties, which are considered more desirable.  Upon information and belief, this is against standard NYPD practice.

93.     On or about October 7, 2020, Officer Federov, a white female, arrived ten (10) minutes late and Officer Roder, a white male, arrived twenty (20) minutes late. Neither received any discipline, and Officer Federov engaged in friendly conversation with Lt. Assing upon arriving.

94.     On or about October 10, 2020, Lt. Assing was 43 minutes late and did not receive any discipline.

13

95.     On October 12, 2020, Defendants sent Plaintiff to Coney Island, where he met with Capt. Rogers and Lt. Clamp. Lt. Clamp told Plaintiff that he had a "bad reputation."

96.     On October 12, 2020, Plaintiff slipped and fell on the bathroom floor in Red Hook and injured his shoulder and hip. This is considered an LOD injury.

97.     On October 12, 2020, after Plaintiff had been injured, Capt. Rogers called Plaintiff and told him that she thought, after their meeting, that they were going to get off to a "fresh start" but stated that his injury "shows his character," and accused him of purposefully injuring himself.

98.     On October 14, 2020, Plaintiff visited an NYPD physician, who behaved towards Plaintiff in a way that indicated he believed Plaintiff was not really injured.

99.     On October 20, 2020, Sgt. Borisenko expressed to other officers that he did not believe that Plaintiff had been injured, and Lt. Assing stated something to the effect of Plaintiff "threw himself onto the floor."

100.    On October 21, 2020, a civilian employee Plaintiff had never met told Plaintiff that she "hears [Plaintiff]'s name all the time" and "wanted to put a face to the name."  Plaintiff interpreted this as her having heard rumors about his appearance and was embarrassed.

101.    On October 22, 2020, Sgt. Khalid handed Plaintiff a LOD report that was not the original from October 12, the day Plaintiff was injured, and on which someone had forged Plaintiff's signature.  Upon information and belief, Sgt. Lai forced Plaintiff's signature on the paperwork.

102.    On October 22, 2020, Plaintiff's union delegate, Officer Belen, informed Plaintiff that Lt. Clamp had not wanted to provide the LOD report to Officer Belen. Officer Belen did not receive it until a second delegate, Officer Gorin, also requested it.

103.     On October 25, 2020, Lt. Assing demanded that Plaintiff mop and clean the floors even though Plaintiff's shoulder was torn. Upon information and belief, Lt. Clamp has not required similarly situated non-male employees to do this when they have been injured.

104.     On or about October 25, 2020, Sgt. Borinsko required Plaintiff to forfeit paid time after Plaintiff arrived twelve (12) minutes late.

105.     On October 26, 2020, a second NYPD physician told Plaintiff that Plaintiff could not be injured because he "just fell on the floor" and "did not fall down a flight of stairs."

106.     On or about October 27, 2020, a civilian NYPD employee told Plaintiff that Defendants treated him poorly because "they take care of white people" and "don't like [Plaintiff] because he's Spanish."

107.     On or about October 27, 2020, Plaintiff was fifteen (15) minutes late and was forced to forfeit paid time, while Officer Astudillo, a woman, walked in at approximately the same time and was not required to forfeit paid time. Towards the end of Plaintiff's shift, numerous officers on the next shift arrived twenty (20) or more minutes late and were not forced to forfeit paid time or otherwise disciplined.

108.     On October 22, 2020, Capt. Rogers yelled at Plaintiff specifically to "put his mask on." Capt. Rogers did not yell at the other officers in the room, none of whom were wearing masks.

109.     In or about October 2020, Lt. Assing refused to give Plaintiff permission to attend a scheduled doctor's appointment related to his injuries.   Upon information and belief, Lt. Assing refused to let him go because he did not belief Plaintiff was really injured.   Upon further information and belief, Lt. Assing has not refused to allow any similarly situated non-Latino and/or female officers attend scheduled doctors appointments.

110.    On November 12, 2020, Officer Belen, Plaintiff's union delegate, informed Plaintiff that Lt. Joseph Ambroso sought to take away five (5) of Plaintiff's paid days because of Plaintiff's lateness, which Belen agreed was excessive. Upon information and belief, Capt. Rogers and Lt. Assing, among other Defendants, directed Lt. Ambroso to take away Plaintiff's paid days.

111.    On November 27, 2020, Plaintiff was notified that he was to be moved to the midnight shift, an undesirable shift, beginning in December. Plaintiff was supposed to go to physical therapy for his LOD injuries on job time but working during the midnight shift prevented this.

112.    On November 27, 2020, Sgt. Lai told Plaintiff: "If it turns out you're not injured, there will be serious consequences."

113.    In or about November or December 2020, Sgt. Lai told Plaintiff that he did not believe Plaintiff was injured and would "make his life miserable."

114.    On December 1, 2020, Plaintiff was transferred to Coney Island for the night at the last minute, even though he had been told by Lt. Clamp that Red Hook was short on officers for the midnight shift.

115.    On December 2, 2020, Capt. Rogers walked up to Plaintiff, made a gun shape with her hands, and said "taser taser" to Plaintiff. Plaintiff interpreted this as threatening and felt very uncomfortable.

116.    On December 3, 2020, Plaintiff was transferred to Coney Island for the night at the last minute without explanation.

117.    On December 8, 2020, Plaintiff was moved from the midnight shift back to a daytime shift without explanation.

118.    On December 27, 2020, an officer explained to Plaintiff, in front of other officers, that Capt. Suarez hated Plaintiff because he was a "good looking man" and said that Suarez had criticized Plaintiff for driving a Maserati, a car that is associated with masculinity.  On another occasion, Lt. Assing criticized Plaintiff for driving a large Jeep, also a car frequently associated with masculinity.

119.    On December 31, 2020, Sgt. George Tavares, a new sergeant, specifically sought out Plaintiff to warn him to "do what you're supposed to do" and to "be careful" in front of other officers.  Upon information and belief, Sgt. Tavares did not say this to any other officers and was instructed to seek Plaintiff out by Lt. Clamp.  To this day, officers jokingly tell Plaintiff to "be careful."

120.    On January 6, 2021, Capt. Rogers issued Plaintiff a command discipline because Plaintiff arrived twenty (20) minutes late, while, that same day, another officer arrived at approximately the same time and was not disciplined.

121.    On January 17, 2021, an officer who Plaintiff had not seen for several years, tells Plaintiff that he is treated the way he is because superior officers believe that he is a "woman beater," even though Plaintiff's ex-girlfriend recanted all allegations against him.

122.    On information and belief, Officer Nelson, a non-Latina female officer, was late for her daytime shift almost every day and is not disciplined for it.

123.    On January 23, 2021, a white male officer, arrived more than forty-five (45) minutes late and receives no discipline.

124.    On January 24, 2021, Lt. Assing arrived forty (40) minutes late and received no discipline.

125.     On January 28, 2021, a different NYPD physician told Plaintiff that it is "virtually impossible" that Plaintiff suffered a torn shoulder and injured hip from his September 2020 slip-and-fall, despite Plaintiff's significant pain and production of an MRI report showing the injury.

126.     On February 3, 2021, when another officer was discussing hallucinogenic drugs, Lt. Assing implied that Plaintiff is a drug user by saying "that sounds like some Deering stuff right there."

127.     On February 10, 2021, Sgt. Borisenko expressed to Plaintiff that Plaintiff did not really need physical therapy in order to recover from his injuries.

128.     On February 13, 2021, Officer Roder, a white male, arrived fifteen (15) minutes late and received no discipline.

129.     On February 17, 2021, Officer Roder arrived fifty (50) minutes late and received no discipline.

130.     On February 17, 2021, Sgt. Borisenko informed Plaintiff that Plaintiff was being transferred back to Coney Island without explanation.

131.     On February 17, 2021, Lt. Assing repeated the false rumor that Plaintiff had purposefully injured himself to an NYPD detective, who then informed Plaintiff of Lt. Assing's statement.

132.     On February 18, 2021, an officer told Plaintiff that Lt. Clamp had a vendetta against him because she is a feminist and is "trying to bury" Plaintiff because he was accused of domestic violence.

133.     On February 18, 2021, Capt. Rogers told Plaintiff that she does not care about when anyone else is late, she only cares when he is late.

134.    On February 21, 2021, a Black male detective informed Plaintiff that Lt. Clamp and Capt. Suarez were offended by Plaintiff's masculinity and that that detective, unlike Plaintiff, could talk to Clamp and Suarez however he wants because he is Black.  Furthermore, the detective informed Plaintiff that supervisors had told a new lieutenant to "mess with" Plaintiff.

135.    In or about February 2021, Capt. Rogers threatened to take Plaintiff off restricted duty, which he was on for his injury, and put him on active duty, even though he had not yet healed. Capt. Rogers stated that while Plaintiff was on restricted duty, she had "no reason to like him" and he was "of no help to me," and she needed "activity" from him.

136.    In or about February 2021, Plaintiff's personal orthopedist told Plaintiff that his shoulder was not injured.  Plaintiff's personal orthopedist knows the NYPD physician who told Plaintiff that Plaintiff was not injured on January 28, 2021.  Upon information and belief, the NYPD physician told Plaintiff's orthopedist that Plaintiff was not really injured in order to keep Plaintiff's orthopedist from providing Plaintiff with medical care.

137.    However, the radiologist who had taken an MRI of Plaintiff's shoulder for the orthopedist told Plaintiff that his shoulder was in fact torn.  A second opinion from another physician confirmed Plaintiff's injury.

138.    On or about March 5, 2021, upon information and belief, Lt. Clamp expressed doubt that Plaintiff really needed physical therapy for his injuries to other supervisors and officers.

139.    On March 7, 2021, Officer Nelson arrived at least sixty (60) minutes late and received no discipline.

140.    On March 10, 2021, Plaintiff saw a non-NYPD physician for a second opinion about his injuries. The physician confirmed that Plaintiff had sustained injuries, including a torn shoulder, and informed Plaintiff that he would require surgery on his shoulder and hip.

19

141.   On March 12, 2021, an officer informed Plaintiff that Plaintiff's supervisors openly said negative and demeaning things about him, including doubting that Plaintiff was injured, while he was at physical therapy.

142.   On March 14, 2021, Lt. Assing shook a seized bag of marijuana at Plaintiff and smiled, another reference to Plaintiff's supposed, but non-existent, drug use.

143.   Beginning on or about March 17, 2021, Plaintiff was transferred to the Breukelen satellite office for several days without explanation.

144.   Beginning on March 24, 2021, Plaintiff was again transferred to the Breukelen satellite office for several days without explanation.

145.   On April 16, 2021, Sgt. Henry inappropriately joked to Plaintiff that he should take his shirt off and flex for Defendants Rogers and Clamp in order to make them like him.

146.   On April 22, 2021, Plaintiff had surgery on his shoulder. As of the filing of this complaint, Plaintiff is still on restricted duty because of the surgery.

147.   Plaintiff's doctors have informed him that he will require surgery on his hip, but he is afraid to get the surgery because of the harassment, discrimination, and retaliation he has experienced based on his shoulder injury.

<u>**FIRST CAUSE ACTION**</u>
**Discrimination (Disparate Treatment) Based**
**on Sex in Violation of Title VII, 42 U.S.C. § 2000e *et seq.***
**(As Against All Defendants)**

148.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-147 of this Complaint as though fully set forth in this paragraph of the Complaint.

149.    At all relevant times, the City through the NYPD was an "employer" within the meaning of Title VII.

150.    At all relevant times, Plaintiff was a "person" within the meaning of Title VII.

151.    The discriminatory actions of the Defendants were invidious and repugnant.

152.    Defendants discriminated against Plaintiff on the basis of his sex (male) in violation of Title VII by treating him differently from and less favorably than similarly situated employees who were not male or who were less stereotypically masculine and subjecting him to disparate working conditions and other disparate terms and conditions.

153.    Defendants' numerous comments about Plaintiff's sex and masculinity are direct evidence of sex-based discrimination.

154.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

155.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and

emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

156.    Defendants' discriminatory actions in violation of Title VII were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

## SECOND CAUSE ACTION
### Discrimination (Disparate Treatment) Based on Race in Violation of Title VII, 42 U.S.C. § 2000e *et seq.* (As Against All Defendants)

157.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-156 of this Complaint as though fully set forth in this paragraph of the Complaint.

158.    At all relevant times, the City through the NYPD was an "employer" within the meaning of Title VII.

159.    At all relevant times, Plaintiff was a "person" within the meaning of Title VII.

160.    The discriminatory actions of the Defendants were invidious and repugnant.

161.    Defendants discriminated against Plaintiff on the basis of his race (Latino) in violation of Title VII by treating him differently from and less favorably than similarly situated employees who were not Latino and subjecting him to disparate working conditions and other disparate terms and conditions.

162.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for

which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

163.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

164.     Defendants' discriminatory actions in violation of Title VII were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

### THIRD CAUSE OF ACTION
**Discrimination (Disparate Treatment) Based Upon
Sex in Violation of New York State Human Rights Law
(As Against All Defendants)**

165.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-164 of this Complaint as though fully set forth in this paragraph of the Complaint.

166.     At all relevant times, the City through the NYPD was an "employer" within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it had more than four (4) persons in its employ at all relevant times.

167.     Plaintiff is an "employee" within the meaning of Executive Law § 292(6).

168.     Defendants discriminated against Plaintiff on the basis of his sex (male) in violation of the Executive Law by treating him differently from and less favorably than similarly situated employees who were not male or who were less stereotypically masculine and subjecting him to disparate working conditions and other disparate terms and conditions.

169.     Defendants' numerous comments about Plaintiff's sex and masculinity are direct evidence of sex-based discrimination.

170.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

171.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

172.     Defendants' discriminatory actions in violation of the Executive Law were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages

**FOURTH CAUSE OF ACTION**
**Discrimination (Disparate Treatment) Based Upon**
**Race in Violation of New York State Human Rights Law**
**(As Against All Defendants)**

173.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-172 of this Complaint as though fully set forth in this paragraph of the Complaint.

174.     At all relevant times, the City through the NYPD was an "employer" within the meaning of Executive Law § 292(5) and within the meaning of the Administrative Code § 8-102(5) because it had more than four (4) persons in its employ at all relevant times.

175.     Plaintiff is an "employee" within the meaning of Executive Law § 292(6).

176.     Defendants discriminated against Plaintiff on the basis of his race (Latino) in violation of the Executive Law by treating him differently from and less favorably than similarly situated employees who were not Latino and subjecting him to disparate working conditions and other disparate terms and conditions.

177.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

178.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

179.     Defendants' discriminatory actions in violation of the Executive Law were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

### FIFTH CAUSE OF ACTION
**Discrimination (Disparate Treatment) Based Upon**
**Sex in Violation of New York City Human Rights Law**
**(As Against All Defendants)**

180.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-179 of this Complaint as though fully set forth in this paragraph of the Complaint.

181.    Plaintiff is an "employee" within the meaning of the Administrative Code § 8-102(1) *et seq.*

182.    Defendants discriminated against Plaintiff on the basis of his sex (male) in violation of the Administrative Code by treating him differently from and less favorably than similarly situated employees who were not male or who were less stereotypically masculine and subjecting him to disparate working conditions and other disparate terms and conditions.

183.    Defendants' numerous comments about Plaintiff's sex and masculinity are direct evidence of sex-based discrimination.

184.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

185.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

186.    Defendants' discriminatory actions in violation of the Administrative Code were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

## SIXTH CAUSE OF ACTION
### Discrimination (Disparate Treatment) Based Upon
### Race in Violation of New York City Human Rights Law
### (As Against All Defendants)

187.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-186 of this Complaint as though fully set forth in this paragraph of the Complaint.

188.    Plaintiff is an "employee" within the meaning of the Administrative Code § 8-102(1) *et seq.*

189.    Defendants discriminated against Plaintiff on the basis of his race (Latino) in violation of the Administrative Code by treating him differently from and less favorably than similarly situated employees who were not Latino and subjecting him to disparate working conditions and other disparate terms and conditions.

190.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

191.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

192.    Defendants' discriminatory actions in violation of the Administrative Code were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless

indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

## SEVENTH CAUSE OF ACTION
### Discrimination (Disparate Treatment) Based Upon
### Disability in Violation of the Americans with Disabilities Act
### (As Against All Defendants)

193.   Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-192 of this Complaint as though fully set forth in this paragraph of the Complaint.

194.   Defendants discriminated against Plaintiff on the basis of his disability in violation of the ADA by treating Plaintiff differently from and less favorably than similarly situated employees without disabilities and subjecting him to disparate working conditions and other disparate terms and conditions.

195.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

196.   As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

197.    Defendants' discriminatory actions in violation of the ADA were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

**EIGHTH CAUSE OF ACTION**
**Discrimination (Disparate Treatment) Based Upon**
**Disability in Violation of the Executive Law**
**(As Against All Defendants)**

198.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-197 of this Complaint as though fully set forth in this paragraph of the Complaint.

199.    Defendants discriminated against Plaintiff on the basis of his disability in violation of the Executive Law by treating Plaintiff differently from and less favorably than similarly situated employees without disabilities and subjecting him to disparate working conditions and other disparate terms and conditions.

200.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

201.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Executive Law, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

202.    Defendants' discriminatory actions in violation of the Executive Law were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages

**NINTH CAUSE OF ACTION**
**Discrimination (Disparate Treatment) Based Upon**
**Disability in Violation of the Administrative Code**
**(As Against All Defendants)**

203.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-202 of this Complaint as though fully set forth in this paragraph of the Complaint.

204.    Defendants discriminated against Plaintiff on the basis of his disability in violation of the Administrative Code by treating Plaintiff differently from and less favorably than similarly situated employees without disabilities and subjecting him to disparate working conditions and other disparate terms and conditions.

205.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation, and benefits, for which he is entitled to an award of monetary damages and other relief, including, but not limited to, attorneys' fees and expenses.

206.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the Administrative Code, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression and humiliation, anxiety, embarrassment, degradation, and severe sleep problems.

207.    Defendants' discriminatory actions in violation of the Executive Law were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's civil rights, for which he is entitled to an award of punitive or exemplary damages.

**TENTH CAUSE OF ACTION**
**Discrimination (Hostile Work Environment) Based Upon**
**Sex in Violation of Title VII, 42 U.S.C. § 2000e *et seq.***
**(As Against All Defendants)**

208.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-207 of this Complaint as though fully set forth in this paragraph of the Complaint.

209.    Defendants created a hostile work environment for Plaintiff because of his sex (male) when they created an objectively abusive work environment, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of Title VII.

210.    By reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based his sex, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

211.    As a result of the Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
### Discrimination (Hostile Work Environment) Based Upon
### Race in Violation of Title VII, 42 U.S.C. § 2000e *et seq.*
### (As Against All Defendants)

212.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-211 of this Complaint as though fully set forth in this paragraph of the Complaint.

213.    Defendants created a hostile work environment for Plaintiff because of his race (Latino) when they created an objectively abusive work environment, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of Title VII.

214.    By reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based on his race, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

215.    As a result of the Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## TWELFTH CAUSE OF ACTION
### Discrimination (Hostile Work Environment) Based Upon
### Sex in Violation of New York State Human Rights Law
### (As Against All Defendants)

216.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-215 of this Complaint as though fully set forth in this paragraph of the Complaint.

217.    Defendants created a hostile work environment for Plaintiff because of his sex (male) when they created an objectively abusive work environment, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of the Executive Law.

218.    By reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based on his sex, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

219.    As a result of the Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## THIRTEENTH CAUSE OF ACTION
### Discrimination (Hostile Work Environment) Based Upon
### Race in Violation of New York State Human Rights Law
### (As Against All Defendants)

220.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-219 of this Complaint as though fully set forth in this paragraph of the Complaint.

221.    Defendants created a hostile work environment for Plaintiff because of his race (Latino) when they created an objectively abusive work environment, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of the Executive Law.

222.    By reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based on his race, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

223.    As a result of the Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

**FOURTEENTH CAUSE OF ACTION**
**Discrimination (Hostile Work Environment) Based Upon**
**Sex in Violation of New York City Human Rights Law**
**(As Against All Defendants)**

224.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-223 of this Complaint as though fully set forth in this paragraph of the Complaint.

225.    Defendants created a hostile work environment for Plaintiff because of his sex (male) when they created an objectively abusive work environment, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of the Administrative Code.

226.    By reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based on his sex, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

227.     As a result of the Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## FIFTEENTH CAUSE OF ACTION
### Discrimination (Hostile Work Environment) Based Upon Race in Violation of New York City Human Rights Law (As Against All Defendants)

228.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-227 of this Complaint as though fully set forth in this paragraph of the Complaint.

229.     Defendants created a hostile work environment for Plaintiff because of his race (Latino) when they created an objectively abusive work environment, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of the Administrative Code.

230.     By reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based on his race, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

231.     As a result of the Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## SIXTEENTH CAUSE OF ACTION
### Discrimination (Hostile Work Environment) Based Upon
### Disability in Violation of the Americans with Disabilities Act
### (As Against All Defendants)

232.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-231 of this Complaint as though fully set forth in this paragraph of the Complaint.

233.     Defendants created a hostile work environment for Plaintiff because of his disability when they created an objectively abusive work environment, which altered the conditions of Plaintiff's employment, in an attempt to marginalize him within the NYPD, in violation of the ADA.

234.     By reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff based on his race and sex, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

235.     As a result of the Defendants' discrimination, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## SEVENTEENTH CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (As Against All Defendants)

236.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-235 of this Complaint as though fully set forth in this paragraph of the Complaint.

237.    Plaintiff was subjected to retaliation in that negative actions were taken against him as a result of his participation in protected activity, in violation of Title VII.

238.    As a result of the Defendants' retaliation, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

### EIGHTEENTH CAUSE OF ACTION
**Retaliation in Violation of the New York State Human Rights Law**
**(As Against All Defendants)**

239.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-238 of this Complaint as though fully set forth in this paragraph of the Complaint.

240.    Plaintiff was subjected to retaliation in that negative actions were taken against him as a result of his participation in protected activity, in violation of the Executive Law.

241.    As a result of the Defendants' retaliation, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

### NINETEENTH CAUSE OF ACTION
**Retaliation in Violation of the New York City Human Rights Law**
**(As Against All Defendants)**

242.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-241 of this Complaint as though fully set forth in this paragraph of the Complaint.

243.    Plaintiff was subjected to retaliation in that negative actions were taken against him as a result of his participation in protected activity, in violation of the Administrative Code.

244.    As a result of the Defendants' retaliation, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## TWENTIETH CAUSE OF ACTION
### Retaliation in Violation of the Americans with Disabilities Act
### (As Against All Defendants)

245.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained in paragraphs 1-245 of this Complaint as though fully set forth in this paragraph of the Complaint.

246.    Plaintiff was subjected to retaliation in that negative actions were taken against him as a result of his participation in protected activity, in violation of the ADA.

247.    As a result of the Defendants' retaliation, Plaintiff suffered and continues to suffer damages, including but limited to lost income, loss of future benefits, mental anguish, and pain and suffering. He is also entitled to attorneys' fees and costs.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of back pay, front pay, and other monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional/mental well-being, loss of enjoyment of life, including pain, suffering, shame, and humiliation.

a.    On the First Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

b. On the Second Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

c. On the Third Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

d. On the Fourth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

e. On the Fifth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

f. On the Sixth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

g. On the Seventh Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

h. On the Eighth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

i.      On the Ninth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

j.      On the Tenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

k.      On the Eleventh Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

l.      On the Twelve Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

m.      On the Thirteenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

n.      On the Fourteenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

o.      On the Fifteenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

p.      On the Sixteenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

q.      On the Seventeenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

r.      On the Eighteenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

s.      On the Nineteenth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

t.      On the Twentieth Cause of Action, judgment against Defendants for at least One Million Dollars ($1,000,000.00) in compensatory damages and attorneys' fees, in an exact amount to be determined at trial;

That Plaintiff have such other, further, and different relief as the Court deem just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorneys' fees, and costs and disbursements in this action.

Dated: New York, New York
June 25, 2021

BALLON STOLL BADER & NADLER, P.C

By:    *s/Marshall Bellovin*
Marshall B. Bellovin, Esq.
*Attorneys for Plaintiff*
810 Seventh Avenue, Ste. 405
New York, New York, 10019
(T) 212-575-7900