UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────

RYAN DEERING,

        Plaintiff,

  -against-

THE CITY OF NEW YORK,
NEW YORK CITY POLICE
DEPARTMENT ("NYPD"), RICHARD
ASSING, PETER BORISENKO,
MAGGIE CLAMP, KRISTEL JOHNSON,
TANYA KINSELLA, HERMAN LAI,
KRYSTIN SUAREZ, and BESEMAH
ROGERS,

        Defendants.
───────────────────────────────────

**MEMORANDUM AND ORDER**
Case No. 21-CV-3601

*Appearances*

*For Plaintiff*:
EDWARD M. TOBIN
Ballon Stoll P.C.
810 7th Avenue, Suite 405
New York, NY 10019

*For Defendants:*
SYLVIA O. HINDS-RADIX
Corporation Counsel, City of New York
100 Church Street
New York, NY 10007
By: DANIELLE DANDRIGE
KAREN K. RHAU

**BLOCK, Senior District Judge:**

    Plaintiff Ryan Deering ("Deering"), a New York City police officer, brings this action against New York City, the New York City Police Department ("NYPD"), and several NYPD personnel. He alleges that he was subjected to disparate treatment and a hostile work environment on the basis of his race, sex,

1

and disability in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), New York State Human Rights Law ("SHRL"), and New York City Human Rights Law ("CHRL"). He also alleges retaliation in violation of these statutes. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## I. SUMMARY OF THE ALLEGATIONS

Deering claims that he was discriminated against over the course of nine years by his superiors on the basis of his sex (male), race (Latino), and disability.

First, he alleges being subject to "numerous comments indicating animus towards men" due to his "tall . . . muscular physique" and "activities that are stereotypically associated with masculinity," including driving "in good cars like BMW[s]" and breeding pit bulls. Amended Complaint ¶ 27-30, 147. Deering claims he was referred to by an NYPD captain as a "stud" in front of superiors and forced to engage in arm-wrestling in front of others. *Id.* at ¶ 32. While one of two males present at his precinct, a female superior demanded Deering install an air conditioner because he was "a man." *Id.* at ¶ 47. In 2019, Deering alleges that a supervisor sent internal NYPD personnel records on Deering to a woman he was dating. Deering claims that he was told by a female captain in August 2020 that "a woman would be able to do [his] job better" and called him a "typical man" *Id.* at

2

¶ 90. Soon after, Deering alleges that a lieutenant sent female officers into the men's locker room to look for him while he was changing.

In December 2020, an officer told Deering in front of others that their presiding captain hated Deering because he was a "good looking man," noting that she had "criticized" him "for driving a Maserati." *Id.* at ¶ 137. The same captain had previously criticized Deering for driving a "large Jeep." *Id.* Deering alleges that in February 2021, a detective told him that his superior was "offended by [Deering's] masculinity," that the detective could talk to superiors "however he wants because he is black," and that supervisors had told a lieutenant to "mess with" him. *Id.* at ¶ 158. Deering had earlier been told by a civilian employee that he was mistreated "because he's Spanish." *Id.* at ¶ 121. In April 2021, Deering was told by a sergeant that "he should take his shirt off and flex" for superiors "in order to make them like him." *Id.* at ¶ 173. In January 2021, an officer told Deering he was treated poorly by superiors because they believed him to be a "woman beater" after an ex-girlfriend accused him of domestic violence, which resulted in dropped disciplinary charges. *Id.* at ¶ 140. That same month, superiors requested that Deering shorten his beard despite his religious accommodation for facial hair. As a result, Deering was required to request a new accommodation for the length of his beard, an arduous process.

3

Deering also alleges dozens of instances of mistreatment on the basis of shoulder and hip injuries sustained while on and off duty. He alleges that his superiors and NYPD doctors accused him of fabricating his injuries, though they were later confirmed by external doctors. Superiors made him submit excessive paperwork and medical documentation, refused him doctor's visits, obstructed his requests for medical records, made it difficult for him to attend physical therapy, and threatened to take him off restricted duty (to which he had been assigned due to his injury). One superior told Deering that she had "no reason to like him" and he was "of no help" while on restricted duty. *Id.* at ¶ 159. After sustaining another injury during a vacation in Las Vegas, Deering claims his vacation time for the trip was retroactively voided as a pretext to discipline him for an unexplained absence. He alleges that superiors harassed him and his family with phone calls and home visits checking to see if he was actually on bed rest at his parent's house.

Deering also claims that between 2014 and 2021, he was frequently transferred between undesirable "punishment" posts without justification, often without a partner, which he claims is unsafe and against NYPD policy. Deering was often given carless posts when extra cars were available or given to rookie officers, which he claims violated precinct rules. Deering received command disciplines and was docked paid time and vacation days on multiple instances for being late to work. He was also told that superiors were "trying to terminate [him]

4

by giving him command disciplines." *Id.* at ¶ 100. At one point, a captain threatened to fire him "for (nonexistent) psychological problems." *Id.* at ¶ 103. Deering was also denied a planned vacation day in December 2016 for pre-booked travel against NYPD standard practice.

Deering alleges that the transfers, command disciplines, and docked and denied vacation days were not imposed on female or non-Latino officers. He provides several examples of officers of similar or lower rank at his precinct who arrived later than he did but went unpunished. Deering claims he was told by one superior that she "only cares when he is late," not others. *Id.* at ¶ 157.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts may consider the complaint and materials attached thereto in making this determination. *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While "detailed factual

5

allegations," are not necessary, "provid[ing] the grounds of . . . entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp.*, 550 U.S. at 555.

### III. DISCUSSION

Defendants challenge each of the 20 counts in Deering's Amended Complaint for failure to state a claim. First, however, the Court addresses Defendant's arguments regarding timeliness and which Defendants can be properly sued.

**a. Proper Defendants**

Deering's claims are dismissed insofar as they are lodged against the NYPD, which is "a non-suable agency of the City." *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Deering's ADA and Title VII claims against individual NYPD personnel are also dismissed, as neither law provides for liability against individuals. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (Title VII); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007) (ADA).

**b. Timeliness**

Defendants argue that Deering's federal claims are time-barred to the extent that they accrued more than 300 days before he filed his EEOC complaint on February 17, 2021. *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325 (2d Cir. 1999). Defendants also argue that his SHRL and CHRL claims, subject to a 3-year

6

statute of limitations, are time-barred to the extent that they address conduct before June 2018. N.Y. C.P.L.R. 214(2); NYC Administrative Code 8-502(d).

Deering's untimely allegations are saved by the continuing violation doctrine, under which "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (internal quotation omitted); *see also Murdaugh v. City of New York*, No. 10 CIV. 7218 HB, 2011 WL 798844 (S.D.N.Y. Mar. 8, 2011) (standard for CHRL and SHRL claims similar to that for ADA and Title VII). The doctrine applies only to related instances of discrimination "permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Washington*, 373 F.3d at 317.

Deering alleges over a dozen instances of repetitive discriminatory conduct predating the limitations period, many of which are related to the timely conduct—including frequent and undesirable transfers, insults from superiors related to his sex, and harassment regarding his injuries. Although the complained of actions were performed by several different supervisors, Deering alleges that they communicated with one another to promote their intent to punish him, suggesting a shared practice of discipline other officers were not subject to. *Cf. Loth v. City of New York*, No. 20 CIV. 9345 (GBD), 2021 WL 4311569, at *4-5 (S.D.N.Y. Sept.

7

21, 2021) (no continuing violation where employee alleged lost pay for lateness, command disciplines, and being denied leave because the "decision to file disciplinary charges" is a "clearly a single act, discrete in its nature").

**c. Deering's Disparate Treatment Claims on the Basis of Race and Sex**

Counts one through six allege disparate treatment on the basis of race and sex in violation of Title VII, SHRL, and CHRL. Under each, Deering must plead that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010); *see Ferrante v. American Lung Ass'n*, 90 N.Y.2d 623, 629 (1997) (SHRL); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 112-13 (1st Dep't 2012) (CHRL). This burden is "minimal." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001).

These requirements are applied more leniently under SHRL and CHRL. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("courts must analyze NYCHRL claims separately and independently from any federal and state law claims" and "broadly in favor of discrimination plaintiffs [if] reasonably possible."); *Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (2019 amendments

move SHRL's standard "closer to the standard under the NYCHRL"). Defendants contest the latter two elements.

### 1. Adverse Employment Action

The complained of conduct must constitute a "materially adverse change in the terms and conditions of employment," *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005), which is "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Galabya v. N.Y.C. Bd. Of Educ.*, 202 F.3d 636, 640 (2d. Cir. 2000), such as "termination, demotion via reduced wage, salary or job title, a material loss of benefits, or significantly reduced responsibilities," *Demerot v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). Multiple lesser actions may also be cognizable. *Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002).

Second Circuit courts have made clear that several of the alleged actions here are not cognizable unless accompanied by "negative consequences, such as demotion, diminution of wages, or other tangible loss." *Moschetti v. New York City Dep't of Educ.*, No. 15-CV-3161 (KMK), 2018 WL 4759787, at *14 (S.D.N.Y. Sept. 28, 2018) (internal quotation omitted) (negative performance evaluations); *Everett v. New York City Dep't of Educ.*, No. 21 CIV. 7043 (JPC), 2022 WL 2342693, at *7 (S.D.N.Y. June 29, 2022) (lateral transfers lacking "a change in responsibilities so significant as to constitute a setback to the plaintiff's career"); *Diaz v. Poly Prep Day Sch.*, No. 21-CV-06611 (BMC), 2022 WL 2803259, at *5

(E.D.N.Y. July 18, 2022) (reprimand, condescension, redundant tasks, and denial of preferred assignments).

Deering sufficiently alleges adverse action because he details tangible consequences stemming from his poor treatment, including lost and denied vacation days, lost paid time, and command disciplines explicitly framed by superiors as an attempt to fire him. *Cf. Roman-Malone v. City of New York*, No. 11 CIV. 8560 PAC, 2013 WL 3835117, at *6 (S.D.N.Y. July 25, 2013) (holding that command discipline charges "without teeth" do not suffice; citing lost vacation days, assignment to another position as potentially cognizable actions).

## 2. Inference of Discrimination

Circumstances giving rise to an inference of discrimination can include,

> but [are] not limited to, an employer's (1) criticism of the plaintiff's performance in ethnically degrading terms, (2) invidious comments about others in the employee's protected group, (3) favorable treatment of employees not in the protected group, and (4) replacing a terminated or demoted employee with an individual outside the employee's protected class.

*LeeHim v. New York City Dep't of Educ.*, No. 17 CIV. 3838 (PAE), 2017 WL 5634128, at *7 (S.D.N.Y. Nov. 21, 2017). There must be "some direct contextual link to a protected characteristic." *Id.* This requirement also applies to CHRL and SHRL claims. *Thomson v. Odyssey House*, No. 14-CV-3857 MKB, 2015 WL 5561209 (E.D.N.Y. Sept. 21, 2015).

Deering alleges several comments which suggest discriminatory intent on the basis of sex under Title VII, and therefore also under SHRL and CHRL. He was referred to by a captain as "stud" in front of superiors, forced to arm-wrestle, told by a female captain that "a woman would be able to do [his] job better," and called a "typical man." Amend. Compl. ¶ 90. He was told a female superior hated him because he was a "good looking man" and was told by a sergeant that he should "take his shirt off and flex" for superiors. *Id.* at ¶ 137, 173.

Deering has also alleged circumstances suggesting racial discrimination. Deering specifically identifies non-Latino officers at his precinct with equivalent or lesser rank who arrived as late or later than Deering and did not receive command disciplines, docked pay time, or lost or denied vacation time. He includes the names of the officers, the date they were late, and how late they were. This is sufficient to infer discriminatory intent. *See Diaz*, 2022 WL 2803259, at *8 ("[A] plaintiff attempting to show that the employer treated her less favorably than a similarly situated employee outside her protected group must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.").

**d. Deering's Disparate Treatment Claims on the Basis of Disability**

In counts seven through nine, Deering alleges disparate treatment on the basis of disability under the ADA, CHRL, and SHRL.

11

Deering's ADA claim must be dismissed because he fails to allege a cognizable disability. Under the ADA, disabilities must "substantially limit one or more major life activities." *Shields v NYC Health & Hosps. Corp.*, 489 F Supp 3d 155, 164 (E.D.N.Y. 2020). Relevant factors include "(1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) the existence of any actual or expected permanent or long term impact." *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 258 (S.D.N.Y. 2009). Deering makes the conclusory allegation that his shoulder and hip injuries, resulting from falling in an NYPD bathroom, have limited his life activities. But he pleads no facts suggesting limitations at work or elsewhere, aside from being placed on restricted duty and given sick leave. *See Lajeunesse v. Great Atl. & Pac. Tea*, 160 F. Supp. 2d 324, 331-32 (D. Conn. 2001) ("temporary injuries without substantial limitations and permanent effects" are not disabilities under the ADA) (cleaned up).

Deering's CHRL and SHRL claims survive, however. His impairments qualify as disabilities under the more lenient standards imposed by SHRL and CHRL. *See* New York State Executive Law § 292 (21) (disabilities include any "physical, mental or medical impairment . . . which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."). He alleges harassing home visits and calls, excessive punishment, and inferior post placements related to superiors' doubts

12

that his injuries were real. This is sufficient to link his injuries with the alleged conduct.

### e. Deering's Hostile Work Environment Claims

In counts 10-16, Deering claims he was subjected to a hostile work environment on the basis of his sex and race under Title VII, CHRL, and SHRL, and on the basis of his disability under the ADA. Each of these claims survives.

Under Title VII and the ADA, a plaintiff must allege a workplace that, due to his protected status, is "so severely permeated with discriminatory intimidation, ridicule, and insult" so as to alter "the terms and conditions" of employment. *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020) (cleaned up). "[T]he misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id.* at 101-02 (cleaned up). Relevant factors can include the conduct's frequency and severity, "whether it is physically threatening or humiliating, . . . whether it unreasonably interferes with an employee's work performance," and its "effect on the employee's well-being." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

SHRL, which lacks the "severe and pervasive requirement" for claims accruing after October 11, 2019, requires allegations of "inferior terms, conditions, or privileges of employment because of [a plaintiff's] membership in one or more

13

protected categories." *Tortorici v. Bus-Tev*, LLC, No. 17CV7507PACKHP, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021). CHRL claimants need only allege that they were treated "less well, at least in part for a discriminatory reason." *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *13 (S.D.N.Y. Feb. 5, 2016).

Deering alleges more than "simple teasing, offhand comments, and isolated incidents," which are insufficient to establish a hostile work environment. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (internal quotation omitted). He alleges multiple offensive and antagonistic comments, several instances of being denied or docked vacation time and paid time, and a multi-year offensive by superiors to punish him for conduct that went unpunished when done by others—clearly worse than "petty slights and trivial inconveniences." *Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (internal quotation omitted). Because his allegations are sufficient to plead a cause of action under Title VII, so too are they adequate under CHRL and SHRL.

Deering's hostile work environment claims based on his race and sex under Title VII, CHRL, and SHRL survive. However, as described above, Deering fails to plead that he was disabled under the ADA, so his ADA hostile work environment claim must fail.

14

**f. Deering's Retaliation Claims**

In counts 17-20 of the Amended Complaint, Deering alleges retaliation in violation of Title VII, the ADA, SHRL, and CHRL. To state a claim under the ADA, Title VII, and SHRL, a plaintiff must allege that he engaged in protected activity of which his employer was aware, that the employer took adverse action against him, and that the two were causally linked. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999); *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013)). CHRL requires the same elements, though with a broader understanding of adverse action. *Calise v. Casa Redimix Concrete Corp.*, No. 20 CIV. 7164 (PAE), 2022 WL 355665, at *5 (S.D.N.Y. Feb. 4, 2022).

Defendants contest causation. A causal link requires "(1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *McNair v. NYC Health & Hosp. Co.*, 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001). Deering seeks to take advantage of the third option, alleging that his poor treatment—including excessive discipline, frequent transfers, hostile remarks, and scrutiny over his injuries—continued after he filed his EEOC complaint, a protected activity. However, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not

15

arise." *Hunter v. St. Francis Hosp.*, 281 F. Supp. 2d 534, 547 (E.D.N.Y. 2003). Here, Deering's alleged mistreatment began well before he filed his EEOC complaint, and he only alleges that the same mistreatment continued afterward. This cannot give rise to an inference of retaliation, and Deering's retaliation claims are therefore dismissed.

## IV. CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Deering's disparate treatment and hostile work environment claims under the ADA and his retaliation claims under Title VII, the ADA, SHRL, and CHRL (counts 7, 16, 17, 18, 19, and 20) are dismissed with respect to all Defendants. Each of Deering's remaining claims (counts 1-6 and 8-15) are dismissed with respect to the NYPD. Deering's remaining Title VII claims (counts 1 and 10) are dismissed as to Defendants Assing, Borisenko, Clamp, Johnson, Kinsella, Lai, Suarez, and Rogers. **SO ORDERED.**

    _/S/ Frederic Block_____
    FREDERIC BLOCK
    Senior United States District Judge

Brooklyn, New York
June 14, 2023